## ILLINOIS CENT. R. CO. et al. v. PORTER.

(Circuit Court of Appeals, Sixth Circuit. June 30, 1913.)

### No. 2,337.

1. DEATH (§ 52*)—EMPLOYER'S LIABILITY ACT—DEATH—DECLARATION.

Under Act April 5, 1910, c. 143, § 2, 36 Stat. 291 (U. S. Comp. St. Supp. 1911, p. 1325), amending Employer's Liability Act April 22, 1908, c. 149, 35 Stat. 65, by adding section 9, providing that a right of action given an injured employé should survive to his personal representative for the benefit of the same relatives for whose pecuniary loss recovery is provided by section 2, a declaration under such act for the alleged wrongful death of an employé, for the benefit of his parents or next of kin, should allege that they suffered pecuniary loss by reason of his death.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 69; Dec. Dig. § 52.*]

2. APPEAL AND ERROR (§ 193*)—REVIEW—QUESTIONS NOT RAISED AT TRIAL—EMPLOYER'S LIABILITY ACT — DECLARATION — ALLEGATION OF PECUNIARY LOSS.

Where, in an action for death of an employé, under Employer's Liability Act April 22, 1908, c. 149, 35 Stat. 65, as amended by Act April 5, 1910, c. 143, § 2, 36 Stat. 291 (U. S. Comp. St. Supp. 1911, p. 1325), by adding section 9, for the benefit of his parents or next of kin, the declaration failed to contain an averment of pecuniary loss, but no objection was taken on that ground by demurrer or at the trial, and no motion was made in arrest of judgment for that reason, and the evidence in fact showed pecuniary loss to decedent's father, the defect was not fatal.

[Ed Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1226-1238, 1240; Dec. Dig. § 193.*]

3. MASTER AND SERVANT (§ 288*)—DEATH OF SERVANT—FELLOW SERVANTS—
NEGLIGENCE—ASSUMED RISK.

Decedent, with fellow truckmen, was engaged in loading interstate
freight from a warehouse into one of defendant's cars. As decedent was
about to enter the car with his truck, he encountered a truck inside the
car about to come out, and in order to avoid collision swung his truck to
one side off the apron extending from the warehouse platform to the
car, and stood in the warehouse, behind the doorway of the car, prac-
tically against its side. While in this position a fellow truckman, wheel-
ing a heavy hogshead coming at full speed, pushed him against the side
of the car, causing injuries from which decedent subsequently died.
*Held*, that evidence that the work was being done at the time and in
the usual and ordinary way, was not proof that the negligent conduct
of decedent's fellow truckman was the usual and ordinary method of
doing the business, and hence decedent did not assume the risk thereof
as a matter of law.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§
1068–1088; Dec. Dig. § 288.*

Assumption of risk incident to employment, see note to Chesapeake &
O. R. Co. v. Hennessey, 38 C. C. A. 314.]

4. COMMERCE (§ 27*)—RAILROADS—EMPLOYER'S LIABILITY ACT.

A truckman, employed by a railroad company to wheel interstate
freight from a warehouse into a car, to be transported in interstate
commerce, injured by being crushed against the side of the car by the
negligence of another truckman, *held* engaged in interstate commerce,
within Employer's Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S.
Comp. St. Supp. 1911, p. 1322), imposing liability on interstate railroads
for injuries to employés so engaged, etc.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig.
§ 27.*]

5. NEGLIGENCE (§ 101*) — CONTRIBUTORY NEGLIGENCE — REDUCTION OF DAM-
AGES.

In an action for death of an employé, engaged in interstate commerce,
under Employer's Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S.
Comp. St. Supp. 1911, p. 1322), the court properly charged that only such
contributory negligence of decedent could be considered by the jury in re-
duction of the damages as proximately contributed to the injury, since
under the act the negligence of the employé, in order to reduce the recov-
ery, must be "causal."

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 85, 163, 164;
Dec. Dig. § 101;* Master and Servant, Cent. Dig. §§ 665, 672.]

6. MASTER AND SERVANT (§ 291*)—INSTRUCTIONS—BURDEN OF PROOF.

Where, in an action for death of an employé from alleged injuries sus-
tained through the negligence of a fellow servant, there was evidence
that he had also sustained an injury the day before, but the court ex-
plicitly charged that there could be no recovery for any injury occurring
on the previous day, and that he could not recover unless the preponder-
ance of the evidence supported an allegation that he was injured through
the negligence of a fellow truckman on the day in question, it was not
error to refuse to charge that, if the evidence left the case in doubt
as to which accident caused decedent's death, no recovery could be had;
nor was the giving of an instruction placing on defendants the burden
of proving the causal relation of the accident of the preceding day and
decedent's death misleading.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§
1133, 1134, 1136–1146; Dec. Dig. § 291.*]

**7. Witnesses (§ 258*)—Refreshing Recollection—Declarations of Decedent.**

Where, in an action for death, a physician, who had taken decedent's statement relating to the accident, and who was permitted to read what he had written at the time of the interview, including decedent's statement that the cause of the injury was the "truck fell on me," the court properly excluded testimony of further conversations between the physician and deceased as to the manner of the injury, where the physician had no recollection, independent of the writing, of the exact words that deceased said about the accident, and was able only to rely on his custom of writing down all that was said. and of the absence from the written statement of any mention of another injury.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 887, 893, 895, 896; Dec. Dig. § 258.*]

In Error to the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Action by James W. Porter, as administrator of the estate of Griff Barton, deceased, against the Illinois Central Railroad Company and the Yazoo & Mississippi Valley Railroad Company. Judgment for plaintiff, and defendants bring error. Affirmed.

Fitzhugh & Biggs, of Memphis, Tenn. (Chas. N. Burch, of Memphis, Tenn., of counsel), for plaintiffs in error.

Anderson & Crabtree, of Memphis, Tenn., for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. This suit was brought to recover damages for negligent injuries resulting in the death of decedent, Griff Barton, while engaged as a trucker in loading freight into a car for transportation in interstate commerce. The negligence alleged is that of a fellow servant of deceased, also a trucker, engaged in loading the same car, and consisted in carelessly running a heavily loaded truck against decedent and crushing him against the side of the car. The declaration was demurred to as showing on its face that decedent's injuries were due to the negligence of his fellow servant. The demurrer was overruled, and pleas of not guilty and contributory negligence were filed. There was trial to a jury, and verdict and judgment for plaintiff.

[1] 1. There was no error in overruling the demurrer. The declaration stated a case under the Employer's Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]), unless in failing to allege pecuniary injury to the next of kin. Under that act the negligence of decedent's fellow servant was the negligence of defendant. The declaration alleged that deceased left a father, two sisters, and a brother, all of whom were named. The natural inference would be that suit was brought for their benefit. The cause of action arose since the 1910 amendment (adding section 9) to the Employer's Liability Act (Act April 5, 1910, c. 143, § 2, 36 Stat. 291 [U. S. Comp. St. Supp. 1911, p. 1325]), by which amendment the right of action given the injured employé was made to sur-

vive to his personal representative for the benefit of the same relatives for whose pecuniary loss recovery is provided by section 2 of the act. It is true that previous to that amendment recovery was limited to compensating such relatives as are shown to have sustained pecuniary loss by the death (Mich. Central R. Co. v. Vreeland, 227 U. S. 59, 33 Sup. Ct. 192, 57 L. Ed. 417; American R. Co. v. Didricksen, 227 U. S. 145, 33 Sup. Ct. 224, 57 L. Ed. 456), and that the apportionment of damages should be made by the jury (Gulf, Colorado, etc., R. Co. v. McGinnis, 228 U. S. 173, 33 Sup. Ct. 426, 57 L. Ed. 785); and we have held in such case that where parents or next of kin are beneficiaries it is necessary that the declaration contain an averment of pecuniary loss (Garrett v. Louisville & Nashville R. Co., 197 Fed. 715, 722, 117 C. C. A. 109). Yet, whatever may be the effect of the amendment of 1910 (a question we are not called upon to consider, in view of the theory on which the case was tried below and the fact that no error is assigned upon the instructions as to the measure of damages), and assuming, for the purposes only of this opinion, that the rules above stated would apply to the surviving right of action of deceased, we think the defect urged was not fatal.

[2] The objection that pecuniary injury to one or more of the relatives named was not alleged was not raised either by demurrer or upon the trial. Had the objection been so raised, the declaration would have been readily amendable. No motion in arrest of judgment was made; but, had it been made, the motion would not have been good. The point under consideration appears to have first occurred to counsel after the decision of the Supreme Court in the McGinnis Case. As a matter of fact, the testimony tended to show pecuniary injury to decedent's father. While the measure of damages was not confined to such pecuniary injury, no error is assigned in this respect. The suit was brought by the only party plaintiff who could recover for the death of deceased, and the recovery barred further action for the same cause. We find nothing to the contrary of this conclusion in the Tennessee cases cited,[1] or in the decision of this court in Atlanta, etc., Ry. Co. v. Hooper, 92 Fed. 820, 35 C. C. A. 24. We have not here a case of total failure to state the existence of statutory beneficiaries.

[3] 2. In loading the car in question the trucks were run over an iron apron extending from the floor of the freight warehouse to and upon the floor of the car, thus covering whatever distance and inequality might exist between the floors of the car and warehouse. A turn had to be made by the trucker just before crossing the apron. Several truckers were employed at the time in loading the car. The testimony tended to show that, as deceased was about to enter the car with his truck, he encountered a trucker inside the car about to come out, as we assume from the testimony; that, in order to avoid

---

[1] Railway Co. v. Lilly, 90 Tenn. 563, 18 S. W. 243; Railroad Co. v. Pitt, 91 Tenn. 86, 90, 18 S. W. 118; Love v. Southern Railway Co., 108 Tenn. 104, 108, 65 S. W. 475, 55 L. R. A. 471; Railroad Co. v. Maxwell, 113 Tenn. 464, 473, 82 S. W. 1137.

collision with the trucker in the car, decedent swung his truck to one side, got off the apron, and stood in the warehouse, beyond the doorway of the car, and practically against its side; that while decedent was in this position a fellow truckman, wheeling a heavy hogshead and coming at full speed, pushed his truck against decedent, crushing him against the side of the car. The evidence was sufficient to support a conclusion that the fellow truckman negligently collided with decedent. Upon cross-examination, an eyewitness to the collision gave an affirmative answer to the question:

"And what was going on at this time was just the usual and ordinary way that the business was operated there?"

Also this testimony was given on cross-examination:

"Q. When they are trucking there, carrying freight, several of them, into the cars, why, they are in the habit of taking these trucks into it, when others are in the way of the car, just like they were doing this time? I say they were going back and forth over this apron all the time? A. Yes, sir. Q. This was just exactly like it was under ordinary circumstances, usual and ordinary way of doing it? A. Yes, sir."

The denial of a motion for directed verdict is assigned as error, on the ground that the risk which resulted in decedent's injuries was the usual and ordinary risk incident to the method of employment, and that the assumption of such risk is not abrogated by the federal Employer's Liability Act. There was no error in refusing a peremptory instruction. In Southern Ry. Co. v. Gadd, 207 Fed. 277 (decided May 6, 1913), we held that even at common law the employé did not assume the risk of the employer's negligence from an unusual and unexpected method of operation; that is to say, not incidental to the ordinary method. Evidence that the work was being done at the time in question "in the usual and ordinary way" was not evidence that negligent conduct such as charged in this case was the usual and ordinary method of doing the business. The natural inference would be that such negligence of a fellow trucker was outside the usual and expected. The risk of such negligence was not, in our opinion, assumed by decedent, and this without reference to any construction of the Employer's Liability Act. The defendant's requests based upon the theory of such assumption of risk were, we think, properly refused, as not supported by a proper construction of the testimony in that respect.

[4] 3. It was not error to refuse to instruct the jury that deceased was not at the time of his injury engaged in interstate commerce. The recent decisions of the Supreme Court in Pedersen v. Delaware, Lackawanna & Western R. Co., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, and St. Louis, San Francisco & Texas R. Co. v. Seale, 229 U. S. 156, 33 Sup. Ct. 651, 57 L. Ed. 1129, are decisive of this question. In the Pedersen Case the plaintiff was an iron worker employed by the railway company in the alteration and repair of bridges and tracks. While walking across a bridge, on his way to another bridge to be repaired, and carrying bolts and rivets to be used for such repair, he was run down and injured by an intrastate passenger train through the negligence of its engineer. Both bridges

were used in both intrastate and interstate commerce. It was held that there was evidence to sustain a finding that the railroad was negligent, and that the plaintiff was employed by it in interstate commerce. In the Seale Case a yard clerk, whose duties were to examine incoming and outgoing trains, to make a record of the numbers and initials on the cars, to inspect and make a record of the seals on the car doors and check the cars with the conductor's list, and to put cards or labels on the cars to guide the switching crews in breaking up incoming trains and making up outgoing trains, his duties relating to both intrastate and interstate traffic, was held to be engaged in interstate commerce while on his way to the performance of his duties through the yards to one of the tracks therein to meet an incoming train from another state.

In the instant case the deceased was actually loading interstate freight into a car for interstate transportation. Under the holding in the Pedersen Case, it would be immaterial whether the fellow trucker whose negligence caused the death was or was not engaged in interstate commerce.

[5] 4. The charge to the jury is criticised as limiting the reduction of damages attributable to the negligence of the deceased to such negligence as proximately contributed to the injury. It is said that under the practice in Tennessee in cases where the contributory negligence does not defeat recovery, but merely reduces damages, any negligence of the person injured which even remotely contributes to the injury is to be taken into account. We need not stop to consider the scope of the Tennessee decisions invoked. They are not binding upon our construction of this federal statute. It is the established rule in the federal courts that contributory negligence, to defeat recovery, must directly and proximately contribute to the injury. We content ourselves with calling attention to the decisions of this court in Coney Island v. Dennan, 149 Fed. 687, 693, 79 C. C. A. 375, and Toledo, St. Louis & Western R. Co. v. Kountz, 168 Fed. 832, 840, 94 C. C. A. 244. We see no logical reason for a different view under the Employer's Liability Act. Under that act the negligence of the employé must, in order to reduce recovery, be "causal." The purpose of the rule of damages provided is, as said by Mr. Justice Van Devanter, in the recent case of Norfolk & Western Ry. Co. v. Earnest, 229 U. S. 114, 33 Sup. Ct. 654, 57 L. Ed. 1096:

"To abrogate the common-law rule completely exonerating the carrier from liability in such a case, and substitute a new rule confining the exoneration to a proportionate part of the damage corresponding to the amount of negligence attributable to the employé."

In the Earnest Case it was pointed out that a comparison of the employé's negligence should be made, not with that of the defendant, but with "the entire negligence attributable to both." In the instant case we pass by that question as not specifically presented.

[6] 5. The accident for which recovery was had occurred on May 24th. There was evidence that on the previous day deceased was injured by the falling upon him of his own loaded truck. It is now urged that recovery should not have been permitted, because the

proof did not sufficiently show to which accident the death was attributable. Complaint is also made of the refusal to give a requested instruction that, if the evidence left the case in doubt as to which accident was the cause of death, no recovery could be had, as well as of the giving of an instruction said to have put upon defendants the burden of proof as to the causal relation of the accident of the 23d; the instruction being, in effect, that if the jury believed "from the greater weight of this testimony" that the death was caused by the accident of the 23d the plaintiff could not recover, because he had not sued for negligence occurring on the 23d. The charge is also said to have held defendants responsible for the entire damage, provided the accident of the 24th proximately contributed to the death. We think these criticisms without merit. There was ample evidence to sustain a finding that the accident of the 24th caused the death. The jury was sufficiently instructed that recovery could be had only on account of the injury of that day. After exceptions had been taken to the charge, the jury was instructed that there could be no recovery for an injury occurring on the 23d, and that the only ground of negligence alleged is that of the fellow truckman in catching and crushing decedent against the car and platform, and that there could be no recovery in the case unless the preponderance of evidence supported that allegation. We think the jury could not well have been misled by anything which had previously been said regarding the burden of proof as to the injury of the 23d.

[7] On May 25th deceased gave the company's physician a statement relating to the accident, which was taken down in writing. Complaint is made of the exclusion of certain offered testimony on the part of the physician, especially to the effect that deceased did not mention the accident of the 24th. The witness was allowed to read what he had written at the time of the interview with deceased on the 25th, including the statement that the cause of the injury stated was the "truck fell on me." The court properly excluded testimony of further conversations between the physician and deceased as to the manner of the injury, for it appeared that the witness had no recollection (independent of the paper) of the "exact words that he [deceased] said about the accident," and apparently was able to rely only on his custom of writing down all that was said, and on the absence from the written statement of mention of any other injury.

We have examined all the errors presented. We find no reversible error in the record, and the judgment of the District Court is affirmed, with costs.